NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ABIUD ROSAS CARREON, *Petitioner/Appellee*,

*v.*

MARIA G. ROSAS RIVERA, *Respondent/Appellant*.

No. 1 CA-CV 25-0415 FC

FILED 02-04-2026

Appeal from the Superior Court in Maricopa County
No. FC2023-001729
No. FC2023-092803
The Honorable Melissa Zabor, Judge

**VACATED IN PART AND AFFIRMED IN PART AND REMANDED**

COUNSEL

Abiud Rosas Carreon
*Pro Per Petitioner/Appellee*

Hildebrand Law PC, Tempe
By Kip M. Micuda and Carlos Noel
*Counsel for Respondent/Appellant*

_____

**MEMORANDUM DECISION**

Judge Veronika Fabian delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Vice Chief Judge David D. Weinzweig joined.

_____

**F A B I A N**, Judge:

¶1        Maria G. Rosas Rivera ("Mother") argues the superior court erred in denying her request to amend the final decree of dissolution ("the Decree") entered between her and Abiud Rosas Carreon ("Father"). The Decree was based on a Rule 69 agreement, Ariz. R. Fam. Law P. 69, which purported to resolve many issues, including how Mother would acquire the marital residence. Mother claims the Rule 69 agreement is unenforceable because it lacked mutual assent. This Court agrees. The transcript memorializing the Rule 69 agreement shows the parties each had their own version of how Mother would acquire the marital residence. Because the Rule 69 agreement lacked mutual assent, it was unenforceable. The superior court's decision is vacated to the extent it relies on that agreement.

**DISCUSSION**

¶2        Mother and Father were married in June 2011 and had four children together. The parties petitioned for dissolution in 2023.

¶3        Leading up to the evidentiary hearing, Mother consistently sought, in settlement negotiations, filings, and her pretrial statement, spousal maintenance under A.R.S. § 25-319, retroactive child and spousal support, child support, and equitable division of community and joint property (including two of Father's businesses) and debts. Mother's pretrial statement identified Exhibit B61, entitled "Offsets Related to Marital Home," which included all of the items Mother was willing to give up to offset Father's equity in the family home. Father, in his pretrial statement, did not request that Mother buy out his interest in the marital home. Instead, Father requested the marital home be sold, with each party receiving half of the proceeds after reimbursement for Father's *Bobrow* and *Ouster* claims.

¶4        As part of settlement negotiations, Father offered to give Mother the marital residence in exchange for her waiver of both spousal

and child support. Although Mother was willing to waive spousal support and back child support, she would not waive future child support. Thus, the parties did not reach settlement.

¶5　　On December 12, 2024, the court held an evidentiary hearing. Both parties were represented by counsel. Immediately before the hearing, counsel met in the hallway, where they believed they reached a Rule 69 agreement on some issues, which they memorialized on the record:

> FATHER'S COUNSEL: We did meet and confer this morning, and we've reached the following agreements under Rule 69: Number one, the division of the bank accounts will be according to the mother's pre-trial statement, subject to any offset regarding the marital residence; number two, the Robinhood account and the TD Ameritrade account have a zero balance as of date of service; number three, the life insurance shall be allocated to each individual as their sole and separate property without offset; number four, the two automobiles shall be allocated to each party as sole and separate property without offset, with full indemnification mutually between the parties for any debts; and number five, division of the income tax refund, which is anticipated for 2022, or any shortfall or any investigation shall be a community property, debt, or asset and shared equally, whether it's a refund or an amount owed.
>
> Did I miss anything, Kip?
>
> MOTHER'S COUNSEL: The only thing, Your Honor, is there may be some things that happen in the future, particularly as to tax returns, where my client is going to be seeking tax advice. So she may be looking to insulate herself from some of the problems that we've been made aware of. But yeah, that's the statement. And so what's most important to my client is that she is getting the marital residence in exchange for the setoffs that are in one of our exhibits.

FATHER'S COUNSEL: Yeah. The sixth item, Your Honor, I neglected to mention. The former marital residence, that will be awarded to [Mother] as her sole and separate property, subject to a 50 percent equity buyout of [Father] within 120 days of signature of the decree. The mortgage shall continue to be paid 100 percent by [Mother].

THE COURT: Counsel, you're going to need to pull that microphone closer to you. Thank you.

FATHER'S COUNSEL: I'm sorry.

THE COURT: Thanks.

MOTHER'S COUNSEL: If I may, Your Honor, part of the consideration for the marital residence is that my client is waiving the setoffs, and we can get into that exhibit during the testimony. But she's waiving spousal maintenance, she's waiving past child support, she's waiving her interest in the two business interests that we claim interest in, and then there's a few other items. But the nut of it is that [Mother] is getting the marital residence. The two businesses are being insulated. She doesn't have an interest. She's waiving. No more spousal maintenance. And we're done with all of that. And that's, like, half the case.

THE COURT: Yes, or more.

FATHER'S COUNSEL: Yeah. And Your Honor, for the record, the buyout will be dictated by the appraisal that is approved by the lender for the refinance. Should we review -- well, let's get the Rule 69 behind us, and then we'll talk about what's coming next.

THE COURT: Sounds good, Counsel. Anything else to add to it?

> MOTHER'S COUNSEL: I can't think of anything, Your Honor.

Without repeating the specific terms of the Rule 69 Agreement, the court asked Mother and Father to confirm they heard and agreed to the agreements as described by counsel. The parties affirmed they did and that the agreements were full and accurate, fair to both parties, and made without threat. When the court asked the parties whether they would like to draw up a formal agreement, their counsel declined, agreeing the minute entry would be sufficient. The court accepted counsel's declarations and the parties' affirmations as the basis of a Rule 69 agreement.

**¶6** Less than two hours after the end of the evidentiary hearing, Mother's and Father's counsel exchanged emails regarding the apparent misunderstanding and notified the court that the parties were ordering transcripts.

**¶7** Five days later, on December 17, 2024, the court adopted the Rule 69 agreement. The court then entered the Decree on December 18, 2024, which incorporated the Rule 69 agreement:

> The parties' Rule 69 agreement includes the following agreements: Mother agrees to waive her interest in Father's businesses. The parties agree to divide the financial accounts, based on Mother's pretrial statement. . . . The parties agree that the Robin Hood and Ameritrade accounts have balances of $0. The parties agree that each party shall keep their own life insurance policy, with no offset to the other party. The parties agree to each keep their own cars, with no offset. The parties agree that the 2022 tax refund or tax debt shall be divided equally.

**¶8** The Decree awarded Mother $524.00 per month in child support and denied requests for spousal maintenance and child support arrears based on the Rule 69 agreement. The court awarded the marital property to Mother as sole and separate property, stating:

> Per the parties' Rule 69 agreement, the house is awarded to Mother. She shall refinance the home in her name and shall provide a 50% buyout to Father within 120 days of this Court

order. The buyout amount shall be dictated by
the appraisal. Mother will continue to make all
mortgage payments.

**¶9**       On January 13, 2025, Mother moved to alter, amend, and grant relief from the Decree under Rules 83(a)(1) and 85(b), contesting that the Rule 69 agreement reflected the terms as intended and requesting the court amend the agreement for no buyout term or grant a new trial on Mother's claims.

**¶10**      The court denied Mother's motion, explaining it "made its findings, consistent with the evidence and testimony presented at trial, as is within its broad discretion to do." Mother appealed from the Decree and order denying her motion to amend the Decree on May 7, 2025. This Court has jurisdiction over Mother's timely appeal pursuant to Article VI, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and 2101(A)(1).

## DISCUSSION

**¶11**      The superior court adopted a Rule 69 agreement, under which Mother would buy out Father's interest in the marital residence, and waive claims for child support arrears, spousal support, and Mother's interest in Father's businesses. Mother argues the court erred because the Rule 69 agreement was unfair and there was no mutual assent as to material terms or consideration. This Court agrees the record does not show the mutual assent necessary to form a binding Rule 69 agreement.

**¶12**      A Rule 69 agreement is valid and binding if, as relevant here, "the agreement's terms are stated on the record before a judge" and "submitted to and approved by the court as provided by law." Ariz. R. Fam. P. 69. Courts presume Rule 69 agreements are valid and the party challenging the validity has the burden to prove an agreement has a defect. Ariz. R. Fam. L. P. 69(c).

**¶13**      The validity and enforceability of a separation agreement is a mixed question of law and fact reviewed *de novo. Buckholtz v. Buckholtz*, 246 Ariz. 126, 129 ¶ 10 (App. 2019). This Court views the evidence in the light most favorable to upholding the superior court's ruling. *In re Marriage of Rojas*, 255 Ariz. 277, 280 ¶ 2 (App. 2023).

6

**I.** **The Record Shows the Rule 69 Agreement is Unenforceable Because of a Mutual Mistake.**

¶14 Mother argues there was a mutual mistake because "the parties and their counsel had different understandings of the material terms as to the marital residence." Specifically, she claims she understood she was waiving "claims to offset [Father]'s interest in the home" while Father "understood [Mother] would buy him out" of the marital home.

¶15 A separation agreement incorporated into a decree is governed by general contract principles and requires mutual assent to be enforceable. *See Buckholtz*, 246 Ariz. at 129 ¶¶ 10-11. For a court to adopt an agreement as binding, the parties must mutually assent to all material terms "without doubt or difference" as to the common intent of the parties. *Id.* at 129 ¶ 11. Parties to a separation agreement must share a "common understanding" of material terms for there to be mutual assent. *Id.* at 130 ¶ 13. "Mutual assent is based on objective evidence, not on the hidden intent of the parties, and objective evidence includes both written and spoken words, as well as acts." *Id.* at 129 ¶ 11. Reasonable misunderstandings can be grounds for finding no mutual assent. *Id.* "Relief is proper if the writing evidencing the purported agreement is uncertain or ambiguous." *Hill-Shafer P'ship v. Chilson Fam. Tr.*, 165 Ariz. 469, 474 (1990). Finally, "to effectuate a waiver of child support arrearages, the facts must demonstrate by '*clear and compelling evidence*' the voluntary and intentional abandonment of a known right." *Ray v. Mangum,* 163 Ariz. 329, 332 (1989) (quoting *Cordova v. Lucero*, 129 Ariz. 184, 187 (App. 1981)); *see also Coburn v. Rhodig*, 243 Ariz. 24, 26 ¶¶ 10-11 (App. 2017) (applying the clear and compelling evidence standard from *Ray*, 163 Ariz. at 332, to enforceability of Rule 69 agreement for spousal support arrearages).

¶16 The transcript from the December 2024 hearing shows there was no agreement. It shows no meeting of the minds on a material term—how Mother would acquire Father's interest in the marital home. Mother's counsel described a "setoff" in which Mother acquired the home in exchange for waiving spousal maintenance, past child support, and her interest in two community-owned businesses. Father's counsel described a "buyout" in which Mother acquired the home in exchange for one-half its appraised equity. The transcript does not reflect mutual assent; it shows two attorneys talking past one another.

¶17 There is no dispute that the interest in the marital residence was material to the agreement. Because there was no mutual assent as to this material term, this Court vacates the superior court's order to the extent that it relies on the unenforceable Rule 69 agreement. The parties' remaining arguments and other pending claims should be determined by the superior court on remand as if no Rule 69 agreement was reached. *See Jacobs v. Jacobs*, 259 Ariz. 467, ¶ 14 (App. 2025).

## II. Father's Legal Citations Contain Substantial Defects.

¶18 Mother points out "[m]any of [Father's] citations are incomplete, a sign of the use of [Artificial Intelligence]." This Court's review reveals that three of the five cases Father cited in his opening brief contain substantial defects, including unsupported premises and fabricated quotations. Thus, this Court finds Father's opening brief violates Arizona Rule of Civil Appellate Procedure 13(a)(7), which requires that arguments contain citations to legal authority.

¶19 Compliance with this Court's rules is not optional. The integrity of the appellate process depends on accurate and honest advocacy. In the future, failure to provide accurate legal authority may result in sanctions. *See* Ariz. R. Civ. App. P. 13(a)(7).

## III. Attorney's Fees and Costs on Appeal.

¶20 Both parties request attorney's fees and costs pursuant to A.R.S. § 25-324(A). Because Mother is the successful party on appeal, this Court awards Mother her taxable costs, A.R.S. § 12-341, contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21, but denies Mother's and Father's requests for attorney's fees.

## CONCLUSION

¶21 Because the Rule 69 agreement lacked mutual assent, it is unenforceable. The Decree is vacated to the extent it relies on the Rule 69 agreement and the case is remanded to the superior court for further proceedings consistent with this decision.

